IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOAN WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| DEB HAALAND, SECRETARY OF | ) |
| U.S. DEPARTMENT OF THE INTERIOR, | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

The plaintiff, Joan Wilson, states and alleges the following claims for relief against the defendant, Deb Haaland, Secretary of the U.S. Department of the Interior.

## JURISDICTION AND VENUE

1. This is an employment case based upon and arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.

2. This court has subject matter jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1331. The plaintiff's claims were included in a formal complaint of discrimination timely filed with the Department of the Interior. The Department issued a Formal Agency Decision on August 4, 2022, and this action is filed within 90 days after the Formal Agency Decision.

3. All of the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C § 1391 (b) - (c).

## PARTIES

4. The plaintiff, Joan Wilson, is a Jamaican Black woman who was born in 1962. She resides in Topeka, Kansas. Ms. Wilson is employed by the U.S. Department of the Interior as a

1

Park Ranger, GS-9, with the National Park Service, at the Brown v. Board of Education Historical Park, which is located in Topeka, Kansas.

5. The defendant, Deb Haaland, is the Secretary of the U.S. Department of the Interior. The U.S. Department of Interior governs the National Park Service, which operates the Brown v. Board of Education Historical Park.

6. Enimini Ekong is the Program Manager of Brown v. Board of Education Historical Park, and he is the first-level supervisor of Ms. Wilson. Mr. Ekong is a Nigerian Black man who was born in 1985. Sherda Williams is the Superintendent, and she is the second-level supervisor of Ms. Wilson at Brown v. Board of Education Historical Park. Ms. Williams is an American White woman who was born in 1954.

## **FACTUAL ALLEGATIONS**

7. Ms. Wilson has worked as a GS-9 Interpretive Park Ranger at the Brown v. Board of Education Historical Park in Topeka, Kansas, for fourteen years. The National Park Service at the Brown v. Board of Education Historical Park is operated by the U.S. Department of the Interior Agency, of which Debra Haaland is the Secretary.

8. Mr. Ekong and Ms. Williams learned of Ms. Wilson's participation in a co-worker's Equal Employment Opportunity ("EEO") investigation in 2016. Despite Ms. Wilson's EEO involvement being statutorily protected, Ms. Wilson became the target of Mr. Ekong's and Ms. Williams' harassing conduct in the years following Ms. Wilson's EEO participation. All of the violative conduct by Ms. Williams and Mr. Ekong was not welcomed by Ms. Wilson.

9. The frequent aggression by Mr. Ekong and Ms. Williams in targeting Ms. Wilson was severe and pervasive enough to interfere with Ms. Wilson's work as a Ranger. In 2018, Ms. Wilson filed her own EEO complaint, alleging hostile work environment and citing Mr. Ekong's pervasively aggressive behavior towards her, after Ms. Wilson had suffered an emotional breakdown following a verbally abusive meeting with Mr. Ekong.

10. Mr. Ekong exhibits habitual aggression towards female employees, including Ms. Wilson, that is severe and pervasive. Mr. Ekong does not demonstrate comparable hostility towards similarly situated male employees.

11. For instance, in 2018, Mr. Ekong sought to terminate a female employee under Ms. Wilson's supervision for gossiping. To secure a pretextual reason for the employee's termination, Mr. Ekong asked Ms. Wilson to supply a more valid reason so that the employee could be terminated. Ms. Wilson, believing there were no legitimate grounds for the employee's dismissal, refused to supply Mr. Ekong with any information that would warrant the employee's termination. Consequently, Mr. Ekong's behavior towards Ms. Wilson grew increasingly threatening towards Ms. Wilson, causing her severe emotional distress.

12. On a different occasion, female students participating in a Youth Leadership Advisory program made reports to Mr. Ekong about faculty using intimidating language and bullying the students. Mr. Ekong rescinded the stipends of the young women who made complaints to him.

13. Ms. Wilson maintained a positive working relationship with the volunteers involved with the program, prompting further aggression from Mr. Ekong towards Ms. Wilson. Mr. Ekong's behavior also reflects a pattern of Mr. Ekong's use of retaliatory adverse actions against women who make complaints about the work environment to Mr. Ekong.

14. After Ms. Wilson had filed an EEO complaint alleging hostile work environment in 2018, Mr. Ekong and Ms. Williams failed to take prompt, effective and appropriate action to remedy Ms. Wilson's complaints. For example, following Ms. Wilson's complaint, an agreement was drafted requiring a third-party to attend meetings between Ms. Wilson and Mr. Ekong. Mr. Ekong and Ms. Williams failed to secure a third-party to attend every meeting between Ms. Wilson and Mr. Ekong.

15. The hostile, intimidating and offensive work environment which Mr. Ekong and Ms. Williams fostered greatly interferes with Ms. Wilson's ability to perform her duties as a Ranger

and, previously, as the Volunteer Coordinator. In particular, in July of 2019, as part of Ms. Wilson's duties as Volunteer Coordinator, Ms. Wilson submitted Mrs. Marietta Patterson for the George and Helen Hertzog Awards for Outstanding Volunteer Service. Mrs. Patterson won the National and Regional award. Mrs. Patterson was informed by the Regional Volunteer and Youth Programs Manager that the park would pay for her travel expenses to attend the award ceremony in Washington, D.C.

16. However, following notification from the Regional office that Mrs. Patterson won the award, Ms. Williams removed Ms. Wilson from her position as Volunteer Coordinator and proceeded to inform Mrs. Patterson that the Brown v. Board of Education Park would not pay for her travel expenses to attend the award ceremony. Ms. Wilson communicated the denial of Mrs. Patterson's travel expenses to a representative of the Washington office, who then contacted Mr. Ekong about concerns regarding the handling of the award recipient's travel expenses. Mr. Ekong chastised Ms. Wilson for contacting the Washington office. The communications between park management and Ms. Wilson became increasingly combative after this dispute.

17. Ms. Wilson's prior EEO activity was a motivating factor in Mr. Ekong's 2020 adverse employment action against Ms. Wilson, where he falsely cites Ms. Wilson's failure to provide travel documents for Ms. Patterson as one reason for her proposed dismissal. Ms. Wilson's earlier testimony brought to light Mr. Ekong's bullying nature towards employees, and Mr. Ekong's actions were motivated by a desire to retaliate against Ms. Wilson for her protected activities.

18. Ms. Wilson's sex was also a motivating factor in Mr. Ekong's 2020 adverse employment action against Ms. Wilson, where he falsely cites Ms. Wilson's failure to provide travel documents for Ms. Patterson as one reason for her proposed dismissal. Mr. Ekong has demonstrated habitual aggression towards female employees, including Ms. Wilson, and does not exhibit this aggressive behavior towards similarly situated male employees.

19. Ms. Wilson's age was also a motivating factor in Mr. Ekong's 2020 adverse employment action against Ms. Wilson, where he falsely cites Ms. Wilson's failure to provide travel documents for Ms. Patterson as one reason for her proposed dismissal. Many of the volunteers at the park are elderly women and Ms. Wilson believes there is a perception that the elderly Black female volunteers are close. This perception motivated Mr. Ekong to take adverse action against Ms. Wilson.

20. During Ms. Wilson's employment under Ms. Williams, Ms. Wilson has been the target of false accusations motivated by racial stereotypes that ultimately became the grounds for the adverse employment actions against Ms. Wilson. Ms. Williams consistently accuses Ms. Wilson of disrespectful behavior when Ms. Wilson is performing innocuous tasks like giving Ms. Williams papers or interacting with park volunteers. Ms. Wilson denies the disrespectful interactions Ms. Williams alleges.

21. In the first five months of 2020, park management alleges that Ms. Wilson made prejudicial comments to a White male coworker. The unproven allegation about Ms. Wilson was upheld by park management as a credible example of Ms. Wilson's aggressive behavior, without further investigation, because the source of the information was a White man. Ms. Wilson's denial of the allegation was deemed by park management as less credible because she is a Black woman. Ms. Wilson perceives Ms. William's behavior towards her to be racially motivated. Ms. Wilson's behavior was deemed "threatening" because of stereotypes held by Ms. Williams that Black women are aggressive.

22. Ms. Wilson's national origin was also a motivating factor in Ms. Williams' behavior towards Ms. Wilson, including the false allegations made against Ms. Wilson that led to the proposal for her termination. Ms. Wilson wears a head covering and has an accent, which Ms. Wilson believes makes her national origin easily identifiable and sets her apart from other park rangers. Ms. Wilson's American White co-worker, who made accusations against her, has made prior comments about Jamaica's history of colonization, indicating a bias against Jamaicans. In

addition, the propensity of management to believe the statements of an American White co-worker over Ms. Wilson's version of events, without sufficient investigation, demonstrates bias by Ms. Williams and Mr. Ekong against Ms. Wilson motivated partially by her national origin.

23. Ms. Wilson's age was a further motivating factor in the allegation that Ms. Wilson's behavior towards Ms. Williams was aggressive, and therefore, grounds for Ms. Wilson's proposed termination. There are few senior park rangers, and Ms. Wilson believes that Ms. Williams has a desire to terminate older employees to allow for the hiring of younger employees. Senior Park employees are often treated by Ms. Williams and Mr. Ekong as expendable.

24. On October 21, 2020, Ms. Williams proposed the termination of Ms. Wilson's employment, based upon the recommendation of Mr. Ekong. The proposed termination of Ms. Wilson's employment was later mitigated to 14-day suspension without pay.

25. As a result of the wrongful acts to which Ms. Wilson has been subjected, she has suffered emotional distress, mental anguish, depression, and loss of enjoyment of life. She has sought counseling to treat these conditions, as well as the services of a life coach.

## **COUNT I: HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII**

26. The above paragraphs are incorporated herein by reference.

27. During her employment at the Brown v. Board of Education Historical Park, Ms. Wilson was subjected to a hostile work environment based on her race/national origin, sex, and/or her engagement in protected activities. This hostile work environment culminated in Ms. Wilson's proposed termination from employment on October 21, 20201 which was later mitigated to a 14-day suspension without pay.

28. The discriminatory intimidation, ridicule, insult, and retaliation to which Ms. Wilson was subjected was sufficiently severe or persuasive so as to alter the terms and conditions of her employment, and to create an abusive work environment. This abusive work environment violated Title VII.

WHEREFORE, Ms. Wilson prays for judgment against the defendant for damages in excess of $75,000.00, plus attorney fees, prejudgment interest, and litigation costs.

## COUNT II: HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADEA

29. The above paragraphs are incorporated by reference.

30. During her employment at the Brown v. Board of Education Historical Park, Ms. Wilson was subjected to a hostile work environment based on her age, and/or her engagement in protected activities. This hostile work environment culminated in Ms. Wilson's proposed termination from employment on October 21, 2022, which was later mitigated to a 14-day suspension without pay.

31. The discriminatory intimidation, ridicule, insult, and retaliation to which Ms. Wilson was subjected was sufficiently severe or pervasive so as to alter the terms and conditions of her employment, and to create an abusive work environment. This abusive work environment violated the ADEA.

32. In subjecting Ms. Wilson to an abusive work environment because of her age, the defendant's agents willfully violated the ADEA. Therefore, the defendant is liable for liquidated damages.

WHEREFORE, Ms. Wilson prays for judgment against the defendant for damages in excess of $75,000.00, plus attorney fees, prejudgment interest, and litigation costs.

Respectfully Submitted,
SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY: /s/Alan V. Johnson
Alan V. Johnson, KS #9992
ajohnson@sloanlawfirm.com
534 South Kansas Avenue, Suite 1000
Topeka, Kansas 66603-3456
785-357-6311
Attorneys for Plaintiff

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

## DESIGNATION OF PLACE OF TRIAL

The plaintiff requests that Kansas City, Kansas, be designated as the place of trial in the above captioned matter.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY: /s/Alan V. Johnson
Alan V. Johnson, KS #9992
ajohnson@sloanlawfirm.com
534 South Kansas Avenue, Suite 1000
Topeka, Kansas 66603-3456
785-357-6311
Attorneys for Plaintiff